UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM H. BUCHANAN,

                Plaintiff,

      V.

JOANNE B. BARNHART,
Commissioner of Social Security,[1]

                Defendant.

**REPORT AND RECOMMENDATION**

07-CV-1114
(NAM/VEB)

## I. INTRODUCTION

In November of 2004, Plaintiff William Buchanan filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since September 1, 2004, due to morbid obesity, knee problems, and other impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through his attorneys, Hinman, Howard & Kattell, Eugene Faughnan, Esq. of counsel, commenced this action on October 22, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. The Clerk of the Court is hereby directed to substitute Commissioner Astrue in place of his predecessor, Jo Anne B. Barnhart, as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of Civil Procedure.

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for DIB on November 17, 2004, alleging disability beginning on September 1, 2004. (T at 11, 54-58).[2]  The application was denied initially on April 5, 2005. (T at 11, 23-25).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (T at 26-27).  A hearing was held in Syracuse, New York on July 13, 2006, before ALJ J. Michael Brounoff.  (T at 206-237).  Plaintiff, represented by counsel, appeared and testified.  (T at 11, 206).  A second hearing was held on September 21, 2006, in Syracuse before ALJ Brounoff, at which George E. Parsons, Ph.D, an impartial vocational expert, appeared and testified.  (T at 11, 238).  On September 27, 2006,  ALJ Brounoff issued a decision denying the application for benefits.  (T at 11-21).  Plaintiff filed a request for review of that decision.  The ALJ's decision became the Commissioner's final decision on August 24, 2007, when the Appeals Council denied Plaintiff's request.  (T at 4-6).

Plaintiff, through counsel, timely commenced this action on October 22, 2007. (Docket No. 1).  Plaintiff filed a supporting Brief on April 10, 2008. (Docket No. 10).  The Commissioner filed a Brief in opposition on May 12, 2008. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B. Analysis

### 1. Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010. (T at 13). The ALJ also found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, September 1, 2004. (T at 13). The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: history of myocardial infarction, advanced lumbar degenerative disease, spondylolisthesis at L4-5, advanced osteoarthritis in the left knee, mild to moderate osteoarthritis in the right knee, mild degenerative changes in the left hip,

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

and morbid obesity. (T at 13).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 14). The ALJ found that Plaintiff is unable to perform his past relevant work, but retained the residual functional capacity ("RFC") to engage in work that requires sedentary exertion. (T at 14, 17).

Specifically, the ALJ found that Plaintiff can occasionally lift/carry and push/pull using all of his extremities ten (10) pounds and less than ten (10) pounds frequently, stand/ walk at least two (2) hours and, sit for six (6) hours in an eight (8) hour workday. (T at 14-15). The ALJ found that Plaintiff can engage "in all postural work activities (including climbing, balancing, stooping, crouching, kneeling, and crawling), and has no manipulative, visual, communicative or environmental limitations." (T at 15).

The ALJ noted that Plaintiff, born June 4, 1951, was an "individual closely approaching advanced age" as defined in 20 C.F.R. § 404.1563. (T at 18). The ALJ found that given Plaintiff's age, acquisition of work skills, education (high school), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21). As such, the ALJ found that Plaintiff has not been under a disability, as defined under the Act at any time relevant to the ALJ's decision. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on August 24, 2007, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

**2.    Plaintiff's Claims**

Plaintiff does not contest the Commissioner's decision as to the first four stages of the sequential analysis. (Docket No. 10, at p. 10). Rather, he asserts that the Commissioner did not meet his burden at step five of the sequential analysis. As such, Plaintiff argues that this case should be remanded for the calculation of benefits.

**a.    Step Five Analysis**

"Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts [at step five of the sequential analysis] to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002)(quoting Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir.1983)).

At step 5 in the sequential evaluation, the ALJ is required to perform a two part process in which the ALJ first must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that the claimant can perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983); SSR 83-11. The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

7

### b. Function of the Grid

The function of the Grid was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of a claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

### c. ALJ's Use of the Grid

In this case, Plaintiff was fifty-three (53) at the alleged onset of disability, which is classified as "closely approaching advanced age," and was fifty-five (55) as of the date of the ALJ's decision, which is classified as "advanced age." (T at 210, 212); 20 C.F.R. § 404.1563. The ALJ noted that Plaintiff's education (which consisted of high school equivalency diploma) does not provide for direct entry into skilled work. (T at 18). The ALJ found that Plaintiff had the RFC to perform sedentary work. The ALJ found that although

8

Plaintiff could not perform his past relevant work, that work "gave him skills which are transferable and highly marketable to sedentary jobs requiring no more than occassional postural activity." (T at 18).

Based upon the above findings, the ALJ consulted §201.15 of the Grid (for the period of "closely approaching advanced age") and §201.07 of the Grid (for the period of "advanced age"). Both of these sections provide for a finding of non-disabled for a claimant whose education does not provide for direct entry into skilled work, whose RFC is limited to sedentary work, and who possesses transferable skills from previous skilled or semi-skilled work.

### d. Transferability of Skills

Plaintiff challenges the ALJ's finding that he possessed transferable skills. Relying upon the vocational expert, the ALJ determined that the Plaintiff possessed the following skills from his past relevant work[5]: equipment operation, inspection, reading and carrying out instructions, adding, subtracting, multiplying, interacting, following manuals, setting and operating machines, electrical assembly and inspection, buffing and grinding. (T at 18).

In his testimony, the vocational expert identified Plaintiff's inspection skills as skills transferable to sedentary jobs with very little vocational adjustment in terms of tools, work processes, work settings, or industry. (T at 268). When asked on cross-examination to explain this skill further, the vocational expert testified as follows: ". . . the skill is really more of a physical skill. It's the ability to obviously identify small differences within a product to

---

[5]Plaintiff had a lengthy history of past relevant work, including: filter line operator for manufacturer of metal filers, filter media operator (for the same employer), television monitor inspector, steel stripper, drill press operator, packer, testing lab worker, fork lift operator, and office cleaner. (T at 17).

9

make sure that the product meets some quality control so it's a knowledge of what is necessary for that to be acceptable product." (T at 272-73). Later, the vocational expert offered that "[i]t's obviously the ability to visualize and see small differences in a product and to maintain the quality of that product by removing those that are different." (T at 277).

Plaintiff argues that the ability to notice small differences "was as much an aptitude as it was a skill." (Docket No. 10, at p. 10). Thus, Plaintiff contends, this ability was too vague to be considered a "transferable skill" within the meaning of the Regulations and was, rather, more in the category of a natural ability or aptitude.

The Regulations define "transferability" as follows:

(1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

(2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which--
(i) The same or a lesser degree of skill is required;
(ii) The same or similar tools and machines are used; and
(iii) The same or similar raw materials, products, processes, or services are involved.

(3) Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

20 C.F.R. § 404.1568 (d)(1-3).

The following additional indication is provided for claimants of advanced age: "If you

10

are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568 (d)(4).

The term "skill" was defined in a Social Security Ruling as follows:

> A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market. Skills are not gained by doing unskilled jobs, and a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs.... A person's acquired work skills may or may not be commensurate with his or her formal educational attainment.

SSR 82-41.

In Draegert, the Second Circuit noted the difference between an aptitude (an "inclination, a natural ability, talent, or capacity for learning") and a skill ("a 'learned power for doing something competently'"), and found that qualities such as "independence of judgment" and "responsibility for a work product" were in the nature of aptitudes and, thus, "too vague to constitute particular skills which are transferable." 311 F.3d at 476. The Second Circuit concluded that the record did not contain substantial evidence supporting the ALJ's finding that the claimant possessed transferable skills. In sum, the court found

11

that the ALJ had not provided a sufficient "indication that, as enhanced by his prior work, those abilities were transferable to the only specific jobs that the ALJ found [claimant] had the residual functional capacity to perform." Id.

Here, the principal abilities noted by the vocational expert, and adopted by the ALJ, were inspection abilities. This Court is not convinced that the ALJ and vocational expert properly accounted for the difference between aptitudes and skills, as outlined by the Second Circuit.

For example, when asked how Plaintiff acquired the ability to detect small differences between objects in his prior jobs, the vocational expert responded: "Well, obviously, he's done it on several different occasions, in several different industries. So, you know, obviously he meets, he does have that ability to be able to see small differences within a product and to maintain a fairly high quality of selection, which is not always true, and some people let many things go by without being able to identify the differences." (T at 278).

The vocational expert appears to be describing an ability that would fall within the definition of an "aptitude," as articulated by the Second Circuit. The ALJ's decision and vocational expert's testimony lack an explanation as to how the inspection "abilities and aptitudes had been used in connection with [the] prior work or had been refined by occupational experience into an acquired work skill." Draegert, 311 F.3d at 476. The mere fact that Plaintiff's prior work involved inspection abilities does not necessarily mean that the prior work refined those abilities into transferable, marketable skills. Id. If for example, Plaintiff's prior work had trained him to repair a particular type of computer, that knowledge would be a highly marketable skill transferable to other employment. The vocational expert

recognized this distinction. (T at 278) ("So, you know, obviously he meets, he does have the ability to be able to see small differences within a product and to maintain a fairly high quality of selection, which is not always true, and some people let many things go by without being able to identify the differences . . . He apparently meets those qualities. Now, is it a marketability, highly marketable skill to, in the nature of somebody who could, you know, repair a computer, the answer is no."). However, while the vocational expert appears to have seen the distinction, neither he nor the ALJ adequately addressed the question of whether they had identified an aptitude or a skill.

In other words, it is not enough that Plaintiff is able to notice small differences between objects, that ability must have been learned, or at least refined beyond his natural ability, through his prior work. See Gittens v. Astrue, No. 07 Civ. 1397, 2008 WL 2787723, at *8 (S.D.N.Y. June 23, 2008) ("To put it another way, a skill is a learned ability, while an attribute is an innate ability."). Although Plaintiff's capacity for noticing small differences is an aptitude that could be applied to certain of the jobs identified by the vocational expert (*e.g.* quality control inspector), it is not clear that this capacity rises to the level of a learned ability transferable to the new employment. See SSR 82-41 (noting that " alertness and close attention ... coordination and dexterity" describe "worker traits (aptitudes or abilities) rather than acquired work skills.").

This Court finds that a remand is necessary for the ALJ to consider this matter further in light of the standard articulated by the Second Circuit in Draegert.  This Court does not accept Plaintiff's argument that no purpose would be served by a remand.  First, the record indicated that many of Plaintiff's jobs required extensive training. (T at 17).  It is possible that further consideration and development of the record will reveal, for example,

that some of that training honed Plaintiff's inspection abilities into a transferable skill. Second, it is not clear from the testimony whether the vocational expert believed Plaintiff possessed transferable skills other than inspection. The vocational expert also referenced abilities related to electric assembly and buffing and grinding operations. (T at 266). However, it is not clear whether he considered those abilities part of the inspection skill or separate and distinct abilities that might rise to the level of transferable skills. Accordingly, this Court finds that a remand is appropriate for the ALJ to give further consideration to the question of whether Plaintiff possessed transferable skills, as defined under the applicable standard. In particular, the ALJ should make specific findings as to whether the identified abilities fall within the definition of "skills," as opposed to "aptitudes."

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 17, 2010

 Syracuse, New York

### V. ORDERS

 Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

 Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 17, 2010

/s/ Victor E. Bianchini
Victor E. Bianchini
United States Magistrate Judge